UNITED STATES v. CHUM SHANG YUEN.

(District Court, S. D. California. September 5, 1893.)

CHINESE—FUNDS FOR DEPORTATION—JUDICIAL COGNIZANCE—NOTICE FROM ATTORNEY GENERAL.

Congress having appropriated funds for the enforcement of the provisions of the Geary act, a district judge should take judicial cognizance that there are funds for the enforcement of any or all of the sections of such act, and should order the deportation of a Chinaman who has not procured certificates of residence, as required by section 6, although the attorney general has informed such judge "that there are no funds to execute the Geary law, so far as the same provides for the deportation of Chinamen who have not obtained certificates of residence."

Proceeding for the deportation of Chum Shang Yuen for violation of the sixth section of the Geary act. Order of deportation granted.

George J. Denis, U. S. Atty.
G. Wiley Wells, for defendant.

ROSS, District Judge. Pursuant to the provisions of section 13 of an act of congress entitled "An act to prohibit the coming of Chinese laborers to the United States," approved September 13,

1888, (25 Stat. p. 476,) which section was not only not repealed by the act of May 5, 1892, commonly known as the "Geary Act," (Stat. 1891-93, p. 25,) but was thereby, in express terms, continued in force, and based upon a verified complaint charging the defendant with a violation of the provisions of the sixth section of the Geary act, a warrant was issued for his arrest, and made returnable before this court. Upon the calling of the case for hearing the district attorney presented to the court a telegram from the attorney general, a copy of which was placed on file, and which reads as follows:

"Dated Washington, D. C. (Sept.) 2nd.

"To U. S. Atty. Denis, Los Angeles, Calif.: I am advised by the secretary of the treasury that there are no funds to execute the Geary law, so far as same provides for deportation of Chinamen who have not procured certificates of residence. On that state of facts, circuit court of United States for southern district of New York made following order: 'Ordered, that blank be, and he hereby is, discharged from the custody of the marshal, and ordered to be deported from the United States whenever provision for such deportation shall be made by the proper authorities.' Ask court to make similar order in like cases.

"Olney, Atty. Genl."

This communication was, no doubt, occasioned by the statement made in the opinion given at the time of issuing the warrant, to the effect that the warrant was issued in the absence of judicial knowledge on my part that the department of the government charged with the duty of executing the provisions of the Geary act was not provided with the necessary funds for the purpose, and that, were I so advised, no warrant for such offending Chinamen would be issued, nor order for their deportation made. These views were grounded in the fact that to do so would not only greatly embarrass a co-ordinate branch of the government, which, without the necessary funds, would be manifestly powerless to send out of the country persons ordered to be deported, and in the further fact that such offending persons could not be constitutionally imprisoned at hard labor in the state prison, as provided by the fourth section of the Geary act, and because any unreasonable detention of them would entitle them to discharge from restraint by the very court ordering their deportation, or by any other court having the power to inquire, by writ of habeas corpus, into the illegal restraint of such persons of their liberty. Such a course is in no respect inconsistent with the entire independence of the judiciary. While, under our system of government, each of the great departments—executive, judicial, and legislative—is, within its proper sphere, wholly independent of the others, yet the design is that all shall work in harmony, and not at cross purposes. The provision of the statute in question is not a penal law. It was so decided by the supreme court in the case of Fong Yue Ting v. U. S., 149 U. S. 698, 13 Sup. Ct. Rep. 1016. Its enactment was the exercise of the political power by congress to expel a certain class of aliens from the country, which could be exercised, as was decided in the case cited, entirely through executive officers, or through them with the aid of the judiciary. By neither method could the objectionable persons be sent away

without money to defray the necessary expenses of their deportation; and I therefore repeat what was said when awarding the warrant,—that no judge, in my opinion, should order into custody, for deportation, any Chinaman whom he judicially knows cannot be deported by the executive department, for want of the necessary means. But the information conveyed to the court through the attorney general is not that there are no funds available for the execution of the Geary act, but that "there are no funds to execute the Geary law, so far as same provides for deportation of Chinamen who have not procured certificates of residence."

That portion of the Geary act requiring such certificates to be procured is the sixth section, and its validity having been sustained by the supreme court in the case of Fong Yue Ting v. U. S., supra, it is as much a part of the Geary law as any other part of it. Any Chinese laborer violating its provisions, and thereafter remaining in this country, is as much unlawfully here as if he smuggled himself into the country contrary to other provisions of the statute, for the simple reason that in each case the existing law makes the act unlawful. The violator of each is subject to deportation, and equally so. No distinction can be legally made between the offenders, and I can see no valid ground for withholding a warrant for the arrest of any person properly charged with a violation of any of the provisions of the law in question, nor for denying an order for the deportation of any such person, proved, upon a proper hearing, to have violated the law, in the absence of judicial knowledge that the department of the government charged with the duty of executing its provisions is not provided with the necessary funds with which to execute such order. That information, as has been said, is not conveyed by the communication from the attorney general. On the contrary, the clear inference to be drawn from it is that there are funds available for the execution of the Geary law, other than its sixth section. The distinction thus attempted to be drawn between the different offenses denounced by the statute is, in my judgment, without authority of law, and my sense of duty obliges me to disregard it.

Congress made no such distinction in making, as it did, an appropriation for the enforcement of the provisions of the Geary act in the act of August 5, 1892, entitled "An act making appropriations for sundry civil expenses of the government for the fiscal year ending June thirtieth, eighteen hundred and ninety-three, and for other purposes," and in making a similar appropriation for the same purpose in the act of March 3, 1893, entitled "An act making appropriations for sundry civil expenses of the government for the fiscal year ending June thirtieth, eighteen hundred and ninety-four, and for other purposes." The provision first referred to is found in United States Statutes at Large 1891-1893, (page 365,) and is as follows:

"Enforcement of the Chinese exclusion act: To prevent unlawful entry of Chinese into the United States, by the appointment of suitable officers to enforce the laws in relation thereto, and for expenses of returning to China,

all Chinese persons found to be unlawfully in the United States, including the cost of imprisonment and actual expense of conveyance of Chinese persons to the frontier or seaboard for deportation, and for enforcing the provisions of the act approved May fifth, eighteen hundred and ninety-two, entitled 'An act to prohibit the coming of Chinese persons into the United States,' one hundred thousand dollars."

And the appropriation for the fiscal year ending June 30, 1894, is found in the same volume, (pages 589 and 590,) and is as follows:

"Enforcement of the Chinese exclusion act: To prevent unlawful entry of Chinese into the United States, by the appointment of suitable officers to enforce the laws in relation thereto, and for expenses of returning to China all Chinese persons found to be unlawfully in the United States, including the cost of imprisonment and actual expense of conveyance of Chinese persons to the frontier or seaboard for deportation, and for enforcing the provisions of the act approved May fifth, eighteen hundred and ninety-two, entitled 'An act to prohibit the coming of Chinese persons into the United States,' fifty thousand dollars, together with the unexpended balance of the appropriation for this object for the fiscal year eighteen hundred and ninety-three."

The evidence in the case showing that the defendant is, and was at the time of the passage of the Geary act, a Chinese laborer residing in this state, and that he failed to register in accordance with the provisions of the sixth section of that act, and no excuse therefor being attempted to be shown, there will be findings accordingly, and an order that he be deported.